Sam Meziani (#9821)
GOEBEL ANDERSON PC
405 South Main Street #200
Salt Lake City, Utah 84111
801-441-9393
SMeziani@GAPClaw.com
*Attorney for Yevgeny Felix Tuchinsky*

Wendy M. Lewis (#5993)
NESTER LEWIS PLLC
50 W. Broadway, Suite 300
Salt Lake City, Utah 84101
(801) 535-4375
Wendy@nesterlewis.com
*Attorney for Yevgeny Felix Tuchinsky*

### IN THE UNITED STATES COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**YEVGENY FELIX TUCHINSKY, et al.**<br><br>Defendants. | **MOTION TO DISMISS**<br><br><br>Civil No. 2:19-CR-00394-RJS-DBP<br><br>District Judge Robert J. Shelby<br><br>Magistrate Dustin B. Pead |

Euguene Tuchinsky, through counsel and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), moves the court to dismiss the Superseding Indictment:

## INTRODUCTION

"Fraud doesn't mean what it used to. A string of high-profile federal prosecutions are falling apart as courts apply a newly narrowed legal definition of the crime."[1]

In May of this year, the Supreme Court issued its decision in *Ciminelli v. United States*.[2] *Ciminelli* took a scalpel to a cancerous body of law that allowed prosecutors to charge citizens based on the theory that depriving a party of "valuable economic information" "necessary to make discretionary economic decisions" is wire fraud. The Court held a misrepresentation that deprives a party of information to make discretionary economic decisions is not wire fraud.

*Ciminelli* controls here because the fraudulent scheme alleged was designed to deprive FedEx of information that FedEx used in deciding whom to award and maintain trucking contracts. The Government alleges Tuchinsky misrepresented the ownership of his companies, thus depriving FedEx of information that the companies were owned by common parties. The Government claims FedEx was harmed by doing business with parties it would not have done business with, but critically, (except for nominal sums)[3], the Government does not contend that Tuchinsky and his companies did not perform the trucking services for which they were hired.

Instead, the core charge is that but for the misrepresentations, FedEx would not have contracted with Tuchinsky in the first place. In the Government's own words— the "*main object*" of the conspiracy was to "*unfairly grow, give undue preferential treatment to, and protect the SLTG co-conspirators' trucking operations….*" This allegation puts the case squarely within

---

[1] *New Definition of 'Fraud' Wipes Out High-Profile Prosecutions*, Wall Street Journal, August 4, 2023. Exhibit A.
[2] 143 S. Ct. 1121, 598 U.S. (2023).
[3] Paragraphs 72-77 allege SLTG was overpaid for 572 miles "that were not actually travelled" in one case and $1,850 for another trip "that did not take place."

*Ciminelli*; Count One alleges FedEx was deprived of valuable economic information necessary to make important decisions so that Tuchinsky was able to grow and maintain his business. Under *Ciminelli*, that theory is no longer tenable. The court should therefore grant the motion to dismiss.

## LEGAL STANDARD

"The Federal Rules of Criminal Procedure encourage the pretrial resolution of a number of important, and even some potentially dispositive, matters."[4]

Under Rule 12(b)(3), a defendant may challenge an indictment before trial when a "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."[5] A court may dismiss an indictment when undisputed facts establish that, "as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."[6]

## ALLEGATIONS

The allegations of the Indictment, taken as true, establish:

1. Eugene Tuchinsky was part of a conspiracy to bribe the FedEx Ground manager at the Salt Lake City hub, Ryan Mower.[7]

2. Although FedEx has a strict no bribery policy, Tuchinsky and his co-conspirators paid Mower and other FedEx employees, ultimately paying them collectively approximately $320.0k.[8]

---

[4] *United States v. Pope*, 613 F.3d 1255, 1258 (10th Cir. 2010).
[5] *Id.* at 1259.
[6] *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (citations omitted).
[7] Superseding Indictment, ¶39.
[8] Superseding Indictment, ¶78. Although factual allegations must be accepted as true, this does not hold for legal conclusions. There is no federal commercial bribery statute. See *Perrin v.*

3

3. "The main object of the conspiracy to defraud" FedEx "was to exploit Mower's position within FXG in order to unfairly grow, give undue preferential treatment to, and protect the SLTG co-conspirators' trucking operations so as to make the many SLTG businesses as lucrative as possible thereby enriching the SLTG co-conspirators."[9]

4. "In return for money, the SLTG co-conspirators exploited MOWER's position at FXG to fraudulently grow and maintain their businesses in several ways."[10]

5. For the manner and means of the conspiracy, the Indictment alleges five categories: (1) Fraudulently obtaining and retaining assigned runs; (2) Manipulating the FXG point system; (3) Bribing other FXG dispatchers; (4) Hiding the true growth of the business; and (5) Boosting miles and ghost routes.[11]

**Fraudulently obtaining and retaining assigned runs**

6. The Indictment alleges that because Mower was receiving bribes, he gave preferential treatment to SLTG in the daily assigning of unassigned runs, and by failing to announce to other companies newly available assigned runs.[12]

---

*U.S.*, 444 U.S. 37, 43 ("…Congress chose not to enact a commercial bribery statute…"). The conduct alleged does not meet the federal definition of bribery in 18 U.S.C. §201 because this case does not concern a public official.
[9] Superseding Indictment, ¶32
[10] Superseding Indictment, ¶38
[11] Superseding Indictment, ¶¶39-71
[12] Superseding Indictment, ¶¶39-45

### Manipulating the FXG point system

7. The Indictment alleges that because Mower was receiving payments, he assisted the co-conspirators by allowing the co-conspirators to submit false accident reports, which allowed SLTG to not lose truck points that FedEx considers in awarding or maintaining trucking routes.[13]

### Bribing other FXG dispatchers

8. Although Mower received approximately $300.0k, the Indictment alleges other dispatchers received approximately $20.0k in cash payments for additional unassigned runs.

### Hiding the true growth of the business

9. The Indictment alleges the conspirators submitted false ownership reports to FedEx, allowing them to evade the FedEx policy that any one contractor may only have 15 service runs in any given hub.[14]

10. Mower helped the conspiracy evade this policy by accepting bribes and by cooperating in concealing the conspirators' true ownership interests and control of several companies from FedEx.[15]

11. Because the conspirators evaded the policy, they were able to collectively operate a trucking company that violated the FedEx policy.

\\

---

[13] Superseding Indictment, ¶¶59-61
[14] Superseding Indictment, ¶¶65-71.
[15] Superseding Indictment, ¶69.

## ARGUMENT

### I. Count One of the Indictment Should be Dismissed

The government must prove agreement to commit wire fraud to prove wire fraud conspiracy.[16] Recent United States Supreme Court authority confirms there are important limits on the wire fraud statute that render Count One legally defective.

In *Ciminelli v. United States*, Governor Cuomo launched a project to develop Buffalo, New York known as the Buffalo Billion initiative.[17] Alain Kaloyeros was a member of the board of directors of the nonprofit corporation charged with administering the project. Todd Howe was a lobbyist. Each month, Kaloyeros paid Howe the lobbyist $25k in state funds to ensure the Cuomo administration maintained Kaloyeros in a prominent position in Buffalo Billion.

Ciminelli owned a construction company. His construction company, LPCiminelli, paid Howe $100k to $180k each year to help the construction company obtain state-funded jobs. Howe and Kaloyeros devised a scheme in which Kaloyeros would tailor the nonprofit corporation's bid process to allow Ciminelli's company to win major Buffalo Billion project contracts. Howe and Kaloyeros did this by developing a process for "preferred developers" to favor Ciminelli. Howe and Kaloyeros also manipulated the request for proposal (RFP) process so that the corporation's ostensibly objective criteria for selecting the contractor were actually

---

[16] Tenth Circuit Pattern Jury Instruction No. 2.19 (Conspiracy), Use Note. "Conspiracy to commit a particular substantive offense requires at least the degree of criminal intent necessary to commit the underlying offense"); *Ingram v. U.S.*, 360 U.S. 672, 678 (1959) ("Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself") (cleaned up)

[17] *Ciminelli*, 598 U.S. _____, (2023); 143 S. Ct. 1121.

and secretly tailored to LPCiminelli's unique characteristics. The conspirators manipulated the bid process to favor Ciminelli so that Ciminelli would be awarded the major contracts.

The Indictment alleged Ciminelli and Kaloyeros devised a scheme to defraud the nonprofit corporation "in its award of significant…contracts by representing to Fort Schuyler that the bidding processes for those contracts were fair, open, and competitive, when, in truth and in fact, Kaloyeros and Todd Howe, in collaboration and in concert with…Ciminelli…used their official positions to secretly tailor the requests for proposals…for those contracts so that companies that were owned…by Ciminelli…would be favored to win the selection process for those contracts."[18] The scheme worked.

Ciminelli was awarded the marquee Riverbend project in Buffalo, in which Ciminelli would be paid $750m. There was no allegation that Ciminelli did not perform any construction work for which he was paid. Like here, the Government alleged a criminal scheme "involving bribery, corruption, fraud, and the award of hundreds of millions of dollars" in contracts.[19] Like here, the Government alleged the defendant paid bribes.[20] Like here, the Government's fraud theory was that the conspirators defrauded the nonprofit corporation by fraudulently manipulating its bid process used to award contracts. Like here, the Government alleged the nonprofit would never have awarded the contract to Ciminelli if it had known the bid process

---

[18] Superseding Indictment in Case No. 1:16-cr-00776-VEC, Southern District of New York, Dkt. 162, ¶39.
[19] Superseding Indictment in Case No. 1:16-cr-00776-VEC, Southern District of New York, Dkt. 162, ¶¶1, 22, 23 ("The Buffalo Billion Fraud and Bribery Scheme"). Exhibit B.
[20] Superseding Indictment in Case No. 1:16-cr-00776-VEC, Southern District of New York, Dkt. 162, ¶47 ("Ciminelli…paid bribes to Todd Howe, in exchange for, to influence, and to reward the taking of official action in his capacity as an agent and representative of SUNY Poly, in connection with obtaining the Buffalo RFP").

was rigged. Just like FedEx here, the nonprofit in *Ciminelli* was wronged only insofar as it awarded contracts to companies who rigged the system.

Despite the bribes, corruption, false statements, and cunning manipulation of the bid process, the Supreme Court held there was no wire fraud. The Court reasoned that depriving the counter party of valuable information *relevant to awarding a contract* is not the same thing as depriving the counter party of money or property, which the wire fraud statute expressly requires.

*Ciminelli* held the meaning of "to defraud" in the statute refers to "wronging one in his property rights."[21] Under the plain text of the statute there must be a scheme or artifice to deprive the victim of money or property.[22] The Supreme Court held that a person does not deprive a victim of money or property by depriving the victim of information necessary to make discretionary economic decisions. Instead, the text of the wire fraud statute is limited to wrongfully obtaining money or property.[23] Because the fraud in *Ciminelli* deprived the nonprofit of information necessary to *award* a contract and did not deprive the nonprofit of money paid for construction services that were not performed, there was no wire fraud. Accordingly, the Court reversed the Second Circuit and remanded.

---

[21] *Ciminelli*, 143 S. Ct. at 1126.

[22] *Ciminelli*, 143 S. Ct. at 1126 ("Although the statute is phrased in the disjunctive, we have consistently understood the "money or property" requirement to limit the "scheme or artifice to defraud" element because the "common understanding" of the words "to defraud" when the statute was enacted referred "to wronging one in his property rights.")

[23] See, e.g., *U.S. v. Nordlicht*, 2023 WL 4490615, *5 (E.D.N.Y. July 12, 2023) ("At most, Nordlicht and Levy intended to deprive bondholders of the knowledge that conflicted bonds were voting on the indenture amendments….Because no reasonable jury could find that defendants intended to defraud bondholders of anything other than 'potentially valuable information'…Nordlicht and Levy's Rule 29 motion for a judgment of acquittal is granted as to their convictions for conspiracy to commit wire fraud")

*Ciminelli* is directly on point and is dispositive of this case.  Both cases concern fraud committed in the process for awarding contracts.  Just like Ciminelli, Tuchinsky is charged with bribing persons with influence over awarding multi-million-dollar contracts.  Just like Ciminelli, Tuchinsky is charged with manipulating the point system used to award contracts.  The manipulation of the RFP process in *Ciminelli* is just like what happened here with the manipulation of the FedEx point system.  Tuchinsky is also charged with misrepresenting and failing to disclose to FedEx his ownership interests in the companies, just like Ciminelli concealed from the nonprofit that he had rigged the bidding process to favor his company.  Just as the nonprofit in *Ciminelli* was deceived in believing Ciminelli met its RFP requirements, FedEx was allegedly deceived in believing Tuchinsky met its ownership requirements.  And just like the prosecution in *Ciminelli*, the Government does not allege, except for nominal amounts, that Tuchinsky did not perform the services he agreed to perform.[24]

---

[24] *U.S. v. Richter*, 796 F.3d 1173, 1191-92 (10th Cir. 2015) is distinguishable because there the customers paid a company for a particular service that was not provided. The customers paid to have their waste disposed of in a certain environmentally sound way, but it was not.  Thus, the customers did not get the benefit of the bargain.  By contrast, here the Government has not alleged any defect in the trucking services actually provided.  The very nature of fraud means that a party who receives the benefit of the bargain is not defrauded.  Indeed *Ciminelli* affirmed the traditional understanding of fraud in existence at the time the statute was enacted.  See also *U.S. v. Shellef*, 507 F.3d 82, 108 (2d. Cir. 2007) ("Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do…."); *U.S. v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970) (in all cases of intent to defraud, the deceit must go "to the nature of the bargain itself"); *U.S. v. Lemire*, 720 F.2d 1327, 1338-39 (D.C. Cir. 1983) (There was "nothing inherent in that failure to disclose [a conflict of interest] that spelled business loss or harm to Raytheon"); *U.S. v. Smith*, 2022 WL 2103063, *8 (no wire fraud because "full economic value was given in exchange for the money or property taken").

In sum, each of the allegations in the Indictment concern misrepresentations that deprived FedEx, not of money or property, but of information relevant to FedEx's decisions to award runs and contracts. Faithfully applying *Ciminelli*, Count One does not state a wire fraud conspiracy claim.

## II.     Counts 2-16 of the Indictment Should be Dismissed

A valid wire fraud conspiracy is a prerequisite for Counts 2-16, which all depend on transactions involving the proceeds of unlawful activity.[25] Having shown Count One does not state a valid claim for wire fraud conspiracy, there are no proceeds of unlawful activity and the money laundering counts must also be dismissed.

## CONCLUSION

The court should dismiss the Superseding Indictment.

DATED:  August 14, 2023

/s/ Sam Meziani
Wendy M. Lewis
Sam Meziani
*Attorneys for Yevgeny Felix Tuchinsky*

---

[25] 18 U.S.C. §§ 1956, 1957.

10