IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YEVGENY FELIX TUCHINSKY and KONSTANIN MIKHAYLOVICH TOMILIN,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT**<br><br>Case No. 2:19-cr-00394-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

On September 14, 2023, Defendant Yevgeny Felix Tuchinsky filed a Motion to Dismiss Second Superseding Indictment,[1] joined by co-Defendant Konstanin Mikhaylovich Tomilin (collectively, Defendants).[2] For the reasons discussed below, the Motion is DENIED.

## BACKGROUND

This case arises out of an alleged bribery and money laundering scheme to improperly obtain contracts for FedEx Ground (FXG) delivery routes. On October 24, 2019, Tuchinsky, Tomilin, and four co-Defendants were indicted on sixteen counts of wire fraud conspiracy and money laundering.[3] The United States filed a Superseding Indictment on October 22, 2020,

---

[1] Dkt. 516, *Motion to Dismiss Second Superseding Indictment* (*Motion to Dismiss Indictment*).

[2] Dkt. 522, *Motion for Joinder in Co-Defendant Yevgeny Felix Tuchinsky's Motion to Dismiss Second Superseding Indictment*; Dkt. 524, *Docket Text Order* granting Tomilin's Motion for Joinder.

[3] *See* Dkt. 1, *Indictment*.

1

adding seven more counts for money laundering.[4] Throughout 2021 and 2022, the four other co-Defendants pled guilty.[5]

On August 23, 2023, the United States filed a Second Superseding Indictment (Indictment).[6] The Indictment charges Defendants with one count of wire fraud and honest services fraud conspiracy, alleging Defendants fraudulently obtained money and contracts from FXG "through false statements, misrepresentations, deception, fraudulent conduct, and omissions of material facts."[7] It also charges Defendants with money laundering for transactions involving allegedly unlawfully obtained funds.[8]

On September 14, 2023, Tuchinsky—later joined by Tomilin—filed a Motion to Dismiss Second Superseding Indictment.[9] Defendants argue the court should dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) for failing to "state a claim for property wire fraud."[10] Defendants further assert the remaining charges should be dismissed because the honest services theory of Count One is barred by judicial estoppel and honest services fraud "will not support the money laundering count."[11]

---

[4] Dkt. 201, *Superseding Indictment*.

[5] *See* Dkt. 265, *Consent to Entry of Plea of Guilty Before the Magistrate Judge and Order of Reference*; Dkt. 303, *Consent to Entry of Plea of Guilty Before the Magistrate Judge and Order of Reference*; Dkt. 409, *Consent to Entry of Plea of Guilty Before the Magistrate Judge and Order of Reference*; Dkt. 419, *Consent to Entry of Plea of Guilty Before the Magistrate Judge and Order of Reference*.

[6] Dkt. 500, *Second Superseding Indictment*.

[7] *Id.* at 6–20.

[8] *Id.* at 20–21, 23–24.

[9] Dkt. 516, *Moton to Dismiss Indictment*; Dkt. 524, *Docket Text Order* granting Tomilin's Motion for Joinder.

[10] *Motion to Dismiss Indictment* at 4.

[11] *Id.* at 5.

The Motion is fully briefed[12] and the court heard argument on November 21, 2023.[13] It is now ripe for review.

## LEGAL STANDARDS

Rule 12(b) of the Federal Rules of Criminal Procedure provides "[a]ny defense, objection, or request that the court can determine without a trial on the merits" can be raised before trial, including a motion alleging a defect in the indictment.[14] A defense is capable of determination "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."[15] The Tenth Circuit has explained that, "[g]enerally, the strength or weakness of the Government's case, or the sufficiency of the Government's evidence to support a charge, may not be challenged by a pretrial motion. An indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."[16] Under Rule 12, the court may "resolve before trial only those motions 'that the court can determine *without a trial of the general issue*.'"[17] The general issue is "defined as evidence relevant to the question of guilt or innocence."[18]

This limitation means there are essentially two types of motions a court may determine before trial.[19] First, pretrial motions which do not implicate the general issue at all, such as

---

[12] *See* Dkt. 530, *Opposition to the Motion to Dismiss Second Superseding Indictment* (*Opposition*); Dkt. 540, *Reply Memorandum* (*Reply*).

[13] Dkt. 558.

[14] Fed. R. Crim. P. 12(b)(1), (3).

[15] *United States v. Covington*, 395 U.S. 57, 60 (1969).

[16] *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (citations omitted).

[17] *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (emphasis in original) (quoting Fed. R. Crim. P. 12(b)(2)).

[18] *Id.* (quoting *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005)).

[19] *Id.* at 1260.

suppression motions.[20]  And second, motions which implicate the general issue, but the court may resolve "because they don't require a *trial* of the general issue."[21]  For example, the court may consider "whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense."[22]  This question does not require a trial "because it focuses solely on the facts alleged in the indictment and their *legal* adequacy."[23]  Similarly, "courts may entertain motions that require it to answer only pure questions of law."[24]  While Defendants do not expressly argue this, the court understands their Motion to fall into this second category because it raises questions of law challenging the legal adequacy of the charged offenses.

## ANALYSIS

Defendants raise three arguments in their Motion.  First, the wire fraud conspiracy charge in Count One of the Indictment should be dismissed because it is foreclosed by the Supreme Court's recent decision in *United States v. Ciminelli*.[25]  Second, the honest services fraud charge in Count One of the Indictment is barred by judicial estoppel and should be dismissed.  Because Defendants' Reply does not respond to the United States' estoppel argument raised in the Opposition brief, the court understands Defendants to have abandoned the argument and does not address it further.  And third, the money laundering counts should be dismissed because—assuming Defendants prevail on their first argument—there is no longer a valid wire fraud conspiracy to support the charge.  The court addresses each argument in turn below.

---

[20] *Id.*

[21] *Id.* (emphasis in original).

[22] *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (citing *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)).

[23] *Pope*, 613 F.3d at 1260 (emphasis in original) (citing *Sampson*, 371 U.S. at 78–80).

[24] *Id.* (citing *Covington*, 395 U.S. at 60 (finding defenses raising questions "of law which may be resolved without reference to the circumstances of the alleged offense" suitable for pretrial determination)).

[25] 598 U.S. 306 (2023).

### I.     Money Wire Fraud

Defendants first argue the court should dismiss Count One of the Indictment for wire fraud conspiracy because it is legally defective following the recent Supreme Court decision in *Ciminelli*.[26]  There, the Supreme Court held the right-to-control theory of wire fraud—where a defendant's scheme deprives a victim of "potentially valuable economic information" "necessary to make discretionary economic decisions"—was not viable under 18 U.S.C. § 1343, the wire fraud statute.[27]  Defendants assert the scheme the United States alleges here is essentially the same as that the Supreme Court rejected in *Ciminelli*.[28]  The United States argues *Ciminelli* does not apply because the Indictment here alleges a "classic theory of money fraud," consistent with Tenth Circuit precedent in *United States v. Richter*.[29]  The court agrees with the United States. The narrow holding of *Ciminelli* does not unsettle the on-point Tenth Circuit precedent set forth by the United States—which Defendants fail to distinguish—and this court is bound to apply that law as it stands today.

The wire fraud statute criminalizes "scheme[s] or artifice[s] to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."[30] The Supreme Court has repeatedly held the "'money or property' requirement" limits the "'scheme or artifice to defraud' element because the 'common understanding' of the words 'to

---

[26] *Motion to Dismiss Indictment* at 9 ("*Ciminelli* is directly on point and is dispositive of this case.").

[27] 598 U.S. at 308.

[28] *Motion to Dismiss Indictment* at 12.

[29] *Opposition* at 2 (citing 796 F.3d 1173 (10th Cir. 2015)).

[30] 18 U.S.C. § 1343.

defraud' when the statute was enacted referred to 'wronging one in his property rights.'"[31] The statute "protects property rights only"[32] and does not permit the federal government to "use the criminal law to enforce (its view of) integrity in broad swaths of state and local policymaking."[33] It follows that the United States "must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'"[34]

Defendants here argue *Ciminelli* forecloses the United States' wire fraud charge. There, the Court rejected the right-to-control theory of wire fraud, holding the right-to-control "is not an interest that had 'long been recognized as property' when the wire fraud statute was enacted."[35] Under the right-to-control theory, the intangible interest of controlling the use of one's assets was considered "property" for purposes of the wire fraud statute.[36] The case involved a development project in Buffalo, New York and a bid-rigging scheme by the defendants—including Ciminelli and a member of the board responsible for administering the project—to ensure valuable contracts were awarded to Ciminelli's construction company.[37] Throughout the lower court proceedings, the United States based its wire fraud charge on only the right-to-control theory, "under which the [United States] can establish wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions."[38]

---

[31] *Ciminelli*, 598 U.S. at 312 (quoting *Cleveland v. United States*, 531 U.S. 12, 19 (2000)).

[32] *Cleveland*, 531 U.S. at 19.

[33] *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020).

[34] *Ciminelli*, 598 U.S. at 312 (quoting *Kelly*, 140 S. Ct. at 1571).

[35] *Id.* at 314 (quoting *Carpenter v. United States*, 484 U.S. 19, 26 (1987)).

[36] *Id.* at 311.

[37] *Id.* at 309–10.

[38] *Id.* at 310.

In rejecting the right-to-control theory, the Court held it "cannot be squared with the text of the federal fraud statutes, which are 'limited in scope to the protection of property rights.'"[39] By treating information as a property interest, the theory made "a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law—in flat contradiction with [the Court's] caution that, '[a]bsent [a] clear statement by Congress,' courts should 'not read the mail [and wire] fraud statute[s] to place under federal superintendence a vast array of conduct traditionally policed by the States.'"[40] While noting its general concern about an expansive construction of federal fraud statutes, the Court declined the United States' invitation to consider whether Ciminelli's conviction could be affirmed on an alternative wire fraud theory—limiting its decision solely to the viability of the right-to-control theory.[41]

Defendants here argue the United States' wire fraud charge mirrors the charge in *Ciminelli*. "The substance of the Government's claim," according to Defendants, "is that [FXG] was deceived and deprived of valuable economic information that [FXG] deemed important in deciding whom to award and maintain trucking contracts."[42] Like the bid-rigging scheme in *Ciminelli*, this case involves an alleged scheme to rig FXG's system for awarding contracts using deception, misrepresentations, and bribes that "deprived [FXG], not of money or property, but of information relevant to [FXG's] decisions to award runs and contracts."[43] According to Defendants, as in *Ciminelli*, the United States does not allege Defendants economically harmed FXG by failing to perform services they were paid to perform.[44]

---

[39] *Id.* at 314.

[40] *Id.* at 315–16 (quoting *Cleveland*, 531 U.S. at 27).

[41] *Id.* at 316–17.

[42] *Motion to Dismiss Indictment* at 3.

[43] *Id.* at 12.

[44] *Id.*

7

In its Opposition, the United States contends *Ciminelli* is not applicable because the United States here alleges a "classic theory of money fraud validated by *United States v. Richter*."[45] As alleged, Defendants "deceived [FXG] about the characteristics of their trucking services to obtain [FXG's] contracts and money."[46] Due to Defendants' deception, FXG did not receive the "premium services it bargained for," depriving it of "the benefit of the bargain."[47] The United States avers the Indictment expressly states the object of the conspiracy was to "fraudulently obtain contracts and money from FXG" and nowhere does it use the terms "right to control" or "economically valuable information."[48] Further, according to the United States, the Tenth Circuit's controlling opinion in *Richter* addresses and affirms the money fraud theory the United States advances here.[49] The court agrees with the United States both as to the scope of *Ciminelli* and the applicability of *Richter*.

First, *Ciminelli* addressed only the right-to-control theory of wire fraud, leaving open the question whether the defendants could have been convicted on an alternative theory on the same facts. Notably, the indictment in *Ciminelli* did not allege contracts were the property defendants sought to obtain.[50] The United States here does not assert a right to control theory. According to the Indictment, the object of the fraudulent scheme alleged was to "obtain contracts and money from FXG" using deception and misrepresentations.[51] Both are traditional property interests

---

[45] *Opposition* at 2.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 11 (quoting *Second Superseding Indictment* ¶ 34).

[49] *Id.* at 8.

[50] *See Ciminelli*, 598 U.S. at 310 n.1.

[51] *Second Superseding Indictment* ¶ 34.

falling within the ambit of § 1343.[52]  The United States does not allege Defendants sought to deprive FXG of its right to control its assets by depriving it of economically valuable information.

The court acknowledges the factual similarity between this case and *Ciminelli*, but its interpretation of the narrow reach of *Ciminelli* is consistent with other courts who have addressed this question.[53]  Noting the Supreme Court's dicta in *Ciminelli*, expressing broader concerns about expansive application of the wire fraud statute, Defendants argue "it is substance not the label that matters."[54]  However, the court's conclusion here rests on more than labels.  The United States adequately alleges a theory of money fraud, involving traditional property

---

[52] *See Ciminelli*, 598 U.S. at 316 ("In sum, the wire fraud statute reaches only traditional property interests."); *Kelly*, 140 S. Ct. at 1571 ("The wire fraud statute thus prohibits only deceptive schemes to deprive [the victim of] money or property." (internal quotations omitted)).

[53] *See United States v. Griffin*, 76 F.4th 724, 738–39 (7th Cir. 2023) (holding *Ciminelli* inapplicable, despite government statement suggesting the interest defendants fraudulently obtained allowed the victim to control its assets, because the government did not expressly pursue a right to control theory but instead alleged a scheme to deprive victim of money and property); *United States v. Porat*, 76 F.4th 213, 219 (3d Cir. 2023) (affirming wire fraud conviction post-*Ciminelli* because "money was an object of [defendant's] scheme," not information); *United States v. Pierre*, 22 Cr. 20 (PGG), 2023 WL 4493511, at *15 (S.D.N.Y. July 12, 2023) (denying motion to dismiss indictments raising *Ciminelli* because "the Indictments do not mention the right to control, nor does the Government rely on the right to control theory in its briefing . . . Defendants ignore that *Ciminelli* does not reach the question of whether the facts in that case could have supported a conviction for fraudulently obtaining the contracts themselves, rather than depriving the victim of valuable economic information for deciding to whom the contracts would be awarded"); *United States v. Hayman*, Criminal Action No. 23-307, 2023 WL 5488429, at *6–7 (E.D. Pa. Aug. 24, 2023) (denying motion to dismiss indictment for wire fraud and finding "the Supreme Court's narrow *Ciminelli* holding" did not apply because defendant was charged with fraudulently obtaining "money and property," not depriving victim of right to control); *United States v. Jesenik*, No. 3:20-cr-228-SI, 2023 WL 3455638, at 2 (D. Or. May 15, 2023) (finding *Ciminelli* did not apply to a scheme to obtain investor money through misrepresentations because "[t]he object of the alleged scheme was not 'control' or 'information,' but money itself.  And *Ciminelli* says nothing about federal criminal liability for such schemes, which are the archetypal subject of federal fraud prosecutions."); *United States v. Ryan*, Criminal Action No. 20-65, 2023 WL 4561627, at *5 (E.D. La. July 17, 2023) (finding *Ciminelli* was "unrelated to the theory the prosecution actually pursued in this case" because government alleged a scheme involving false loan documents and deceit to obtain money, not information); *United States v. Pasternak*, No. 18-cr-51 (ENV), 2023 WL 4217719, at *2 (E.D.N.Y. June 27, 2023) (finding *Ciminelli* inapplicable even with the inclusion of a right to control jury instruction because the government's case relied solely on theory defendant defrauded victims out of their money—"This was fraud before *Ciminelli*, and it is fraud today."); *United States v. Runner*, No. 18-CR-0578(JS), 2023 WL 3727532, at *2 (E.D.N.Y. May 30, 2023) (finding government alleged a scheme to obtain money through misrepresentations and "Defendant cannot use *Ciminelli* as a shield to prevent the Government from introducing misrepresentations or omissions underlying the alleged scheme to defraud under the guise of construing those same deceptions as exclusively relevant to the victim's property interest to 'mere information' to render them unactionable").

[54] *Motion to Dismiss Indictment* at 4.

interests, consistent with the line of cases limiting and defining the reach of the wire fraud statute.

Second, while *Ciminelli* does not preclude the United States' theory, the Tenth Circuit's controlling opinion in *Richter* affirmatively supports it. The *Richter* defendants misrepresented to customers they would dispose of electronic waste "lawfully, domestically, and in an environmentally safe manner."[55] Despite those representations, they unlawfully exported the waste. They later raised the same defense as Defendants here—the "scheme could not involve a deprivation of money because the e-waste removal services that were paid for were actually performed."[56] The Tenth Circuit affirmed the wire fraud conviction because "customers paid to have their e-waste disposed in accordance with the defendants' factual representations, which were material to the customers' decisions."[57] A trier of fact could reasonably conclude "customers were induced to pay for services under false pretenses" and did not get the benefit of the bargain.[58]

Here, *Richter*'s holding notwithstanding, Defendants assert the wire fraud charge fails because they did not deprive FXG of money or property—they performed the services they were contracted to perform—and "the Supreme Court has never endorsed the [United States'] fraudulent inducement theory."[59] It may be true the Supreme Court has not affirmatively approved the theory, but the inverse is also true. As of now, the Supreme Court has not rejected the so-called fraudulent inducement theory. Moreover, *Richter* clearly supports this theory in the Tenth Circuit:

---

[55] *Opposition* at 9 (citing *Richter*, 796 F.3d at 1192).

[56] *United States v. Richter*, 796 F.3d 1173, 1192 (10th Cir. 2015).

[57] *Id.*

[58] *Id.*

[59] *Reply* at 3.

10

> A reasonable trier of fact could conclude the customers were induced to pay for services under false pretenses . . . . Under similar circumstances, the Fourth, Seventh, and Eighth Circuits have held that payments made in exchange for services provided under a contract induced by false representations, even where the services are performed, constitute a deprivation of money or property sufficient to invoke the federal fraud statutes.[60]

Defendants' attempt to distinguish *Richter* is also unavailing. They argue that, unlike this case, the misrepresentations in *Richter* went to an "essential element of the bargain."[61] Defendants there "lied about the essential nature of the service they were providing" and "provided a qualitatively different service" than what their customers had paid for.[62] *Richter* is inapt here, Defendants argue, because their alleged misrepresentations concerned only the identity of the party performing the service and did not go to the heart of the bargain.[63] According to Defendants, while they obtained money from FXG, FXG was not "deprived" of money because it received the benefit of the bargain—the package delivery services Defendants were paid to provide.[64]

The court cannot accept this argument because it is contrary to the facts in the Indictment, which the court must take as true at this stage. The United States alleges Defendants' fraudulent scheme did deprive FXG of the full benefit of the bargain.[65] FXG's point system for awarding contracts sought to obtain "premium services" by distributing contracts to service providers based on business merit—considering factors such as the number of trucks a provider has

---

[60] *Richter*, 796 F.3d at 1192 (citing *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006); *United States v. Bunn*, 26 F. App'x 139 (4th Cir. 2001) (unpublished); *United States v. Granberry*, 908 F.2d 278 (8th Cir. 1990)).

[61] *Reply* at 6.

[62] *Id.*

[63] *Id.* at 7.

[64] *Id.* at 4.

[65] *Opposition* at 5–6, 13.

11

servicing routes and a provider's safety record.[66]  The bargain at issue here was not simply for the delivery of packages, it was the delivery of packages in a particular way by a particular type of carrier.  Defendants' alleged scheme involved gaming that system through bribes, misrepresentations, and deception to obtain FXG's money and delivery service contracts even though they did not provide—and knew they were not providing—the bargained-for "premium services."

*Richter* required only that the "defendants' factual representations" be "material to the [victim's] decision" such that "[a] reasonable trier of fact could conclude the customers were induced to pay for services under false pretenses."[67]  It was irrelevant that the waste was ultimately disposed of.  Defendants obtained their customers' money by promising to dispose of the waste in a particular way—which they did not do.  Like the victims in *Richter* who were induced by misrepresentations concerning the nature of the services they paid for, Defendants here allegedly fraudulently induced FXG to pay for "premium services" knowing those were not the services they were providing.  As charged in the Indictment, this was not simply about the identity of the party performing the services.  To use Defendants' language, Defendants "provided a qualitatively different service"[68] than represented to FXG.  The United States has alleged FXG did not receive the benefit of the bargain.  Defendants cannot challenge the legal adequacy of the Indictment by redefining that bargain.

In sum, Defendants ask the court to read *Ciminelli* in a way that is inconsistent with the text of the opinion and at odds with binding Tenth Circuit caselaw.  This is beyond the province

---

[66] *Id.*

[67] *Richter*, 796 F.3d at 1192.

[68] *Reply* at 6.

of this court to do. Therefore, Defendants' request to dismiss the wire fraud component of Count One of the Indictment is DENIED.

## II. Money Laundering

Defendants also move to dismiss the money laundering counts of the Indictment.[69] Defendants argue the counts should be dismissed because a valid wire fraud conspiracy is a prerequisite to money laundering, "which depends on transactions involving the proceeds of unlawful activity."[70] Assuming the court would accept their argument concerning the validity of the wire fraud charge, Defendants assert the money laundering charge also must fall.[71] Further, Defendants contend honest services fraud cannot support the money laundering charge.[72]

As discussed above, the court denies Defendants' request to dismiss the wire fraud count of the Indictment, concluding the United States alleged a valid theory of money wire fraud. Accordingly, there is a predicate underlying offense supporting the money laundering count and the court need not resolve the question whether the charge could be sustained with only honest services fraud. Defendants' request to dismiss the money laundering counts of the Indictment is DENIED.

---

[69] *Motion to Dismiss Indictment* at 17.

[70] *Id.*

[71] *Id.*

[72] *Id.*

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Second Superseding Indictment is DENIED.[73]

So ORDERED this 27th day of November 2023.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[73] Dkt. 516, *Motion to Dismiss Second Superseding Indictment*.